# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA, *ex rel.*    )
JOHN LAVIN,    )
    )
        Petitioner,    )
    )    Case No. 04 CV 5175
    v.    )
    )    Judge Joan B. Gottschall
J.R. WALLS, Warden[1],    )
    )
        Respondent.    )

## MEMORANDUM OPINION AND ORDER

Petitioner John Lavin was convicted of attempted first degree murder, aggravated battery, and aggravated battery of a senior citizen. (*Compare* Tr. R. at G4-5 *with* Tr. R. at H92, Resp. Ex. W, Doc. No. 149.) This matter comes before the court on Lavin's Second Amended Petition for Writ of Habeas Corpus. (Doc. No. 132.)

## I. BACKGROUND

Lavin was convicted of attempted first degree murder, aggravated battery, and aggravated battery of a senior citizen, following a bench trial in the Circuit Court of Cook County. (*Compare* Tr. R. at G4-5 *with* Tr. R. at H92.) According to the testimony at trial, Lavin and 81 year-old Gilbert Costello were involved in an altercation on the evening of April 20, 1997. (*See id.* at G21-48, G120-21, H3-29.) Lavin and Costello were seen pushing one another; Lavin then punched Costello in the face, knocking him to the ground. (*See id.* at G21-48.) Lavin tried to finish Costello off by "stomping" on Costello's head three times, causing extensive

---

[1] Lavin is currently incarcerated at the Western Illinois Correctional Center. (Answer to Second Amend. Pet. at 1 n.1, Doc. No. 148.) John Evans, the original defendant in this case, has been replaced by J.R. Walls as warden of that institution. (*See id.*) Accordingly, Walls is substituted for Evans as the respondent in this action. *See* Fed. R. Civ. P. 25(d); Rules Governing § 2254 Cases, R. 2(a).

injuries.  (*See id.*; *id.* at G120-121, H3-29.)   After being found guilty on all counts, Lavin was sentenced to a forty-year prison term.  (*See id.* at H92, I34-35.)

Lavin's convictions were affirmed by the Illinois Appellate Court, and Lavin's petition for leave to appeal was summarily denied by the Supreme Court of Illinois.  (Mod. Order on Denial of Rehearing, Resp. Ex. A; Denial of Pet. for Leave to Appeal, Resp. Ex. J.)  Lavin subsequently filed a petition for post-conviction relief, which was rejected by the Circuit Court.  (Pet. for Post-Conviction Relief, Resp. Ex. K; Order of Cook County Cir. Ct., Resp. Ex. L.)  The Illinois Appellate Court upheld the Circuit Court's decision, ruling that there were "no issues of arguable merit"; McDowell's petition for leave to appeal to the Supreme Court of Illinois was later denied.  (Order of Ill. App. Ct., Resp. Ex. M; Denial of Pet. for Leave to Appeal, Resp. Ex. Q.)

Having exhausted his state court remedies, Lavin filed a petition for writ of habeas corpus.[2]  (Second Amend. Pet.)   Liberally construed, Lavin's petition states claims for: (1) ineffective assistance of counsel; (2) invalid waiver of Lavin's right to a jury trial; (3) failure to prove beyond a reasonable doubt factors that lead to an expanded sentence, allegedly in violation of *Apprendi v. New Jersey*; and (4) insufficiency of the evidence.  (*See id.*; Pet.'s Reply and Mem. of Law, Doc. No. 145.)  *See Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir. 1996) ("Although we agree that the petition is not a model of legal draftsmanship, it is important to construe *pro se* filings liberally.").

---

[2]      Lavin originally filed his habeas petition *pro se*.  (Pet., Doc. No. 1.)  The court later appointed counsel for Lavin, who filed a "Reply and Memorandum of Law" on Lavin's behalf.  (Pet.'s Reply and Mem. of Law.)  The parties subsequently entered into a "stipulation" agreeing that the reply would be characterized as a "supplemental amended petition."  (Stip. with Respect to Final Pleadings, Doc. No. 157.)  Because Lavin's counseled reply / supplemental petition helps to clarify some of the arguments set forth in Lavin's 111-page handwritten *pro se* petition, the court will honor the parties' stipulation and consider Lavin's counseled reply as if it were a supplemental amendment to Lavin's second amended petition for habeas relief.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2254, a federal court cannot issue a writ of habeas corpus for a person held pursuant to a state court judgment unless the state court's previous adjudication of the petitioner's claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "highly deferential standard." *Bennett v. Gaetz*, 592 F.3d 786, 790 (7th Cir. 2010).

A decision is "contrary to" federal law when it "contradicts the governing law set forth in [the United State Supreme Court's] cases," or when "'the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from our precedent.'" *Collins v. Gaetz*, --- F.3d ----, 2010 WL 2735744, at *10 (7th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A decision involves an "unreasonable application" of federal law when it "'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case,' but not when the state court merely applies federal law 'erroneously or incorrectly.'" *Id.* (quoting *Williams*, 529 U.S. at 407-80, 411) (internal citations omitted). In other words, "the state court's application of federal law must be 'well outside the boundaries of permissible differences of opinion'" to be considered "unreasonable." *Id.* (quoting *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir.2003)).

"Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, [a District Court] evaluate[s] the decision of the last state court to adjudicate a habeas petitioner's claim." *Cianciola v. Dittmann*, 593 F.3d 656, 657 (7th Cir. 2010). Because the Illinois Supreme Court denied Lavin's petitions for review, "[the court] look[s] to the opinion[s] of the Illinois Appellate

Court, as well as to the written opinion[s] of the trial court, [to the extent its] reasoning and outcome were followed and affirmed on appeal." *Collins*, --- F.3d ----, 2010 WL 2735744, at *10.

## III. ANALYSIS

### A. Ineffective Assistance

Lavin argues that "trial counsel was ineffective for failing to present or raise an intoxication defense and for failing to present the facts showing Lavin was inebriated at the time of the incident where he couldn't form [specific intent] to commit attempt[ed] murder." (Second Amended Pet. at 11-12; *see id*. at 13-31.) Respondent urges that "counsel's decision to pursue a mistaken identity defense instead of a voluntary intoxication defense was a matter of trial strategy," and therefore sacrosanct under the Sixth Amendment. (Answer to Second Amend. Pet. at 18.) The court agrees with Respondent.

In order to establish ineffective assistance of counsel, a petitioner must demonstrate that: "(1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result." *Gentry v. Sevier*, 597 F.3d 838, 851 (7th Cir. 2010) (quoting *Wyatt v. United States*, 574 F.3d 455, 457-58 (7th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984))). This is a difficult standard to meet, as the petitioner "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 687-88). "In order to establish sufficient prejudice resulting from the deficiencies in a counsel's performance, a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Porter v. McCollum*, --- U.S. ----, 130 S.Ct. 447, 452 (2009)).

The Circuit Court rejected Lavin's ineffective assistance of counsel claim on post-conviction review, holding as follows:

> Lavin contends that his trial counsel was ineffective for failing to raise the affirmative defense of voluntary intoxication. The defense presented was mistaken identity.
>
> ****
>
> It would be inconsistent to claim that Lavin was not the person who committed the crime and that Lavin was so intoxicated that he could not have formed the requisite mental state for attempted murder. Because these theories are mutually exclusive, the defense counsel had to pick one theory to go forward with. Counsel pursued this strategy during opening and closing arguments and during cross examination and, based on the record, it is clear that counsel conducted a meaningful adversarial testing of the State's case.

(Order of Cook County Cir. Ct. at 4-6 (internal citations omitted).) The Illinois Appellate Court summarily affirmed the Circuit Court's opinion, ruling only that there were "no issues of arguable merit." (Order of Ill. App. Ct.)

The Circuit Court (and by extension, the Appellate Court) was not unreasonable in concluding that counsel's conduct fell within the standard established by *Strickland*. Lavin does not dispute that his counsel competently presented a defense of "mistaken identity," or that his counsel "conducted a meaningful adversarial testing of the State's case." (*Compare* Second Amend. Pet. at 13-31 *with* Order of Cook County Cir. Ct. at 4-6.) Instead, Lavin complains that intoxication was his "most viable and meritorious defense," and therefore the one his counsel should have used at trial. (Second Amend. Pet. at 19.) It is well-established, however, that "[r]eview of trial counsel's performance 'must be highly deferential' and 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Smith v. Gaetz*, 565 F.3d 346, 352-53 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). Moreover, "[a] petitioner must 'overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 466 U.S. at 689).

*United States v. ex rel. Madej v. Gilmore*, No. 98 C 1866, 2002 WL 370222, at *12 (N.D. Ill. Mar. 8, 2002), is instructive.[3] In that case, Madej argued that his counsel should have pursued a reasonable doubt theory instead of the ultimately unsuccessful diminished capacity defense counsel used at trial. *Id.* The court disagreed, reasoning as follows:

> If trial counsel were to pursue both a diminished capacity and a reasonable doubt theory the likely result would be that neither defense would be believed. On the one hand counsel would be claiming that Petitioner committed the offense but it should be excused due to his diminished capacity. On the other hand counsel would be claiming that petitioner did not do it because there was another person in the car with him that might have committed the crime. It is clearly within the realm of trial strategy to choose to pursue one defense over another, especially when they are inconsistent. In hindsight, perhaps counsel should have pursued the reasonable doubt defense rather than the diminished capacity defense but hindsight must be avoided in judging trial strategy. The attorney's conduct must be evaluated based on the information available at the time the decision was made. Based on the overwhelming evidence against the defendant at the time of trial, it was not unreasonable for counsel to choose to pursue a diminished capacity defense.

*Id.*

The same is true in Lavin's case. As the Circuit Court pointed out, "[i]t would be inconsistent to claim that Lavin was not the person who committed the crime and that Lavin was so intoxicated that he could not have formed the requisite mental state for attempted murder." (Order of Cook County Cir. Ct. at 4-6.) Because these defenses are mutually exclusive, "it is clearly within the realm of trial strategy" for Lavin's counsel to have chosen one defense over the other. *See Madej*, No. 98 C 1866, 2002 WL 370222, at *12. Although Lavin's counsel may have had greater success pursuing the voluntary intoxication defense in hindsight, "hindsight must be avoided in judging trial strategy." *See id.*

---

[3] *See also Cartee v. Nix*, 803 F.2d 296, 303 (7th Cir. 1986) (rejecting ineffective assistance claim where counsel declined to cross-examine witness for fear of eliciting testimony inconsistent with defense).

Moreover, Lavin's counsel's decision to pursue a defense of mistaken identity is easily justifiable as sound trial strategy under the circumstances. As Lavin points out, there was only one eyewitness, Mark Gilbert, to the altercation between Lavin and Costello. (Pet.'s Reply and Mem. of Law at 4.) Although Gilbert claimed to have gotten a good look at Lavin, Gilbert was watching the assault at night from more than "half a block away." (*Id.*) In light of these facts, Lavin's counsel had ample basis to argue that the person Gilbert saw fighting with Costello was not Lavin. If successful, the mistaken identity defense would have resulted in acquittal as to all of the charges against Lavin; intoxication, by contrast, would have been a defense only to the charge of attempted murder, leaving Lavin vulnerable to conviction on the aggravated battery charges. (*See* Answer to Second Amend. Pet. at 21 (citing *People v. Rodgers*, 780 N.E.2d 352, 356 (Ill. App. Ct. 2002) ("It is well-settled that the defense of voluntary intoxication may be employed only when the offense charged requires the proof of a specific intent as one of the elements of the crime. It is not a defense to general-intent crimes.")).) Thus, counsel took a calculated risk by choosing to pursue the defense that offered to yield the greatest benefit to his client. "[B]ased on the information available at the time the decision was made," Lavin's counsel was not unreasonable in opting to argue mistaken identity instead of intoxication.[4] *See Madej*, No. 98 C 1866, 2002 WL 370222, at *12.

## B. Waiver of Right to Trial by Jury

Lavin argues that "the state took away his jury trial rights violating his 14th amendment 5th and 6th amendment rights." (Second Amend. Pet. at 87.) Although Lavin acknowledges his

---

[4] In rejecting Lavin's petition for post-conviction relief, the Circuit Court noted that "the defense of voluntary intoxication was raised on a post-trial motion by trial counsel, after the court determined that Lavin was indeed the person who committed the crime." (Order of Cook County Cir. Ct. at 4-6.) If true, this seriously undermines Lavin's ineffective assistance claim. Because neither side has argued this point (nor provided a copy of counsel's post-trial motion or the Circuit Court's ruling thereon), the court is unable to address it. (*See* Second Amend. Pet.; Answer to Second Amend. Pet.)

colloquy with the judge in which he expressly waived his right to a jury trial, Lavin claims that he "never executed a jury waiver," and that he was "confused and coerced" into orally waiving his jury trial rights. (*Id*. at 88-93.) According to Respondent, however, "the record reveals that the court admonished petitioner about the effect of that waiver and that petitioner's election was both knowing and voluntary." (Answer to Second Amend. Pet. at 22.) There is no need for the court to reach the merits of the parties' arguments, since Lavin's jury trial claim is barred by the doctrine of procedural default. Even if Lavin's claim was not barred, however, Lavin has failed to demonstrate that his waiver was invalid.

### 1. Procedural Default

The court "cannot review a habeas petitioner's constitutional issue unless he has provided the state courts with an opportunity to resolve it 'by invoking one complete round of the state's established appellate review process,'" *Byers v. Basinger*, --- F.3d ---, 2010 WL 2696522, at *4 (7th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)), "either on direct appeal or post-conviction review," *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). "If the claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review." *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

Lavin failed to present his jury waiver claim to the Illinois Appellate and Supreme Courts, either during his direct appeal or while seeking post-conviction relief. (*See* Def. Appellant's Br., Resp. Ex. B; Pet. for Leave to Appeal, Resp. Ex. I; Pet. for Post-Conviction Relief; Post-Conviction Pet. for Leave to Appeal, Resp. Ex. P.) Instead, Lavin based his challenges on *Miranda*, insufficiency of the evidence, *Apprendi v. New Jersey*, and (on post-conviction) ineffective assistance. (*See* Def. Appellant's Br.; Pet. for Leave to Appeal; Pet. for

Post-Conviction Relief; Post-Conviction Pet. for Leave to Appeal.) The instant petition for habeas is the first time Lavin has ever argued that his jury trial waiver was invalid. (*See* Second Amend. Pet. at 87-93.) Because Lavin failed to raise this argument in the Illinois state courts, he is precluded from doing so here.[5] *See United States ex rel. Clark v. Peters*, No. 90 C 3643, 1991 WL 211256, at *5 (N.D. Ill. Oct. 3, 1991) (holding that habeas claim based on lack of intelligent, voluntary jury trial waiver was barred by procedural default).

### 2. Invalid Waiver

A "valid waiver" of a criminal defendant's Sixth Amendment right to trial by jury requires only that "the defendant 'underst[and] that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *United States v. Johnson*, 306 Fed. Appx. 305, 379-80 (7th Cir. 2009) (quoting *Halym v. Mitchell*, 492 F.3d 680, 698 (6th Cir. 2007)). In order for a waiver to be valid, "the trial judge need not explain the ramifications of a waiver in terms of the number of votes required for conviction or acquittal." *Whitehead v. Cowan*, 263 F.3d 708, 732 (7th Cir. 2001). In determining the validity of the waiver after the fact, "the burden is on the defendant to show that a waiver was not knowingly and intelligently made." *Id.*

Even if Lavin's jury trial waiver argument was not barred by procedural default, the record clearly establishes that Lavin's waiver was voluntary and intelligent. (*See* Tr. R. at G4-11.) Lavin's claim that he "never executed a jury waiver" (Second Amend. Pet. at 88-93) is belied by the trial record, which states as follows:

> [Counsel]:   Your Honor, at this time we are tendering a jury waiver that was
>              executed on October 16.
>                                   ****

---

[5]      Although Respondent failed to argue procedural default in his answer (*see* Answer to Second Amend. Pet.), "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

| [Court]: | All right.  Do you understand that by signing this piece of paper you're giving up your right to jury trial and you're going to have a bench trial[?] |
|---|---|
| [Lavin]: | Yes, sir. |
| [Court]: | That's what you want to do? |
| [Lavin]: | Yes, sir. |

(Tr. R. at G4, 10.)  Thus, the trial transcript clearly reflects Lavin confirming that he executed a jury trial waiver.  (*See id.*)

Even if Lavin had not signed the waiver, "the absence of a written waiver form . . . will not result in reversal if the colloquy provides sufficient indicia of a knowing and voluntary waiver."  *Johnson*, 306 Fed. Appx. at 379-80.  Before accepting Lavin's waiver, the judge advised Lavin as to the consequences of his waiver, and ensured that it was both intelligent and voluntary.  (*See* Tr. R. at G4-11.)  First, the judge apprised Lavin of each charge pending against him, as well as the sentencing enhancements applicable to each charge.  (*Id.* at G4-8.)  The judge asked Lavin if he "understood what [he was] charged with," and "the possible penalties on these charges," to which Lavin responded, "Yes, sir."  (*Id.* at G5-8.)  Next, the judge explained that "on each one of these charges you're entitled to have a jury trial," and went on to describe what a jury trial entails.  (*Id.* at G8-9.)  When the judge asked Lavin, "Do you understand what a jury trial is," Lavin replied, "Yes, sir."  (*Id.* at G9.)  The colloquy continued as follows:

| Q: | If you don't want a jury trial, then you can have a bench trial.  On a bench trial I and I alone will decide if the State proves you guilty beyond a reasonable doubt.  I am the one that says guilty or not guilty.<br>Do you understand the difference between the two of them? |
|---|---|
| A: | Yes, sir, I do. |
| Q: | Any questions you want to ask me about that? |
| A: | No, sir. |
| Q: | Which one do you want?  A jury or a bench? |
| A: | I would like you to make the decision, sir [indicating desire for a bench trial]. |

****

| Q: | Has anybody forced you to do that, give up your right to a jury trial? |
|---|---|
| A: | No, sir. |

| Q: | Did anyone threaten you to make you do it? |
|----|---|
| A: | No. |
| Q: | Anybody promise you anything to get you to do that? |
| A: | No. |

****

| Q: | All right.  And you want to have - - you still want to have a bench trial? |
|----|---|
| A: | Yes, sir. |
| Q: | All right.  Jury waiver will be accepted. |

(*Id.* at G9-11.)  Although Lavin claims that he was "confused and coerced" into orally waiving his jury trial rights, there is no indication of confusion or coercion in the record.  (*See id.*)  To the contrary, Lavin expressly stated that he understood the nature of his jury trial waiver, and that he was not coerced or threatened in any way.  (*See id.*)  Lavin has failed to identify, let alone adduce any evidence of, confusion or coercion outside the record.  (*See* Second Amend. Pet. at 88-93.) Lavin has therefore failed to carry his burden of demonstrating that the waiver was invalid.

## C.  *Apprendi v. New Jersey*

Lavin argues that the Circuit Court violated his 14th, 6th, and 5th amendment rights under *Apprendi v. New Jersey*, 510 U.S. 466 (2000), by "taking away defendants['] jury trial rights and finding all 5 aggr[avating] factors by a preponderance of the evidence standard." (Second Amend. Pet. at 12; *see id*. at 87, 98-109.)  According to Lavin, criminal defendants "have a right to have all aggr[avating] factors submitted to a jury at sentencing and proved beyond a reasonable doubt standard."  (*Id*. at 98.)  Respondent argues that since Lavin was found "guilty beyond a reasonable doubt of aggravated battery of a senior citizen, the court necessarily found beyond a reasonable doubt that the victim was 60 years of age or older."  (Answer to Second Amend. Pet. at 26.)  The court agrees with Respondent.

Normally the sentence for attempted murder in Illinois is limited to a statutory maximum of 30 years.  *See* 720 ILCS 5/8-4(c)(1) (defining attempt to commit first degree murder as a Class X felony); 730 ILCS 5/5-4.5-25 (providing maximum sentence of 30 years for Class X felonies).

If, however, the judge determines that any of several aggravating factors apply, a defendant can be sentenced to an "extended term" of between 30 and 60 years. *See* 730 ILCS 5/5-4.5-25 (providing for extended terms based on aggravating factors); 730 ILCS 5/5-8-2(a) (same). One of those aggravating factors is whether "the defendant committed the offense against a person 60 years of age or older or such person's property." 730 ILCS 5/5-5-3.2(a)(8).

At trial, Lavin was convicted of attempted murder and "aggravated battery of a senior citizen." (*Compare* Tr. R. at G4-5 *with* Tr. R. at H92.) In finding Lavin guilty on all counts, the trial judge observed that:

> Mr. Costello . . . [is] a person of extremely advanced years. In excess of eighty years old. As far as I'm concerned that's extremely advanced.

(*Id*. at H90-91.) Accordingly, the trial judge sentenced Lavin to a total of 40 years' imprisonment; 30 years for attempted first degree murder, plus another 10 years based on aggravating factors. (*Id*. at I34-35.) In applying the aggravating factors to Lavin's case, the trial judge ruled as follows:

> I find the following factors in aggravation . . . to be appropriate.
>
> In aggravation the defendant has a lengthy prior criminal record including several convictions for battery, a crime of violence.
>
> In aggravation I find that the victim was over the age of sixty years and on that basis the defendant is eligible for an extended sentence. The victim being over eighty [was] a matter of fact in this case.
>
> In aggravation I think the sentence is necessary for the protection of the public.
>
> In aggravation I also believe I consider the sentence to be necessary for the rehabilitation of the defendant.
>
> Also in aggravation are the facts. It has been characterized as a vicious and unprovoked attack by the state's attorney, I think that's accurate.

(*Id.*)

After Lavin's sentence was handed down, the United States Supreme Court decided *Apprendi v. New Jersey*, in which it was held that:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

*Apprendi*, 510 U.S. at 490.

After losing his initial appeal, Lavin filed a petition for rehearing, arguing that "the extended term portion of . . . Lavin's sentence [based on Costello's advanced age] must be vacated in light of . . . *Apprendi v. New Jersey*." (Pet. for Rehearing at 1-2, Resp. Ex. E.) The Illinois Appellate Court granted the petition but rejected Lavin's *Apprendi* challenge, reasoning as follows:

> Here, defendant was convicted in a bench trial of all counts in the indictment, including aggravated battery of a senior citizen, an element of which is the victim's age. . . . And in finding defendant guilty of aggravated battery of a senior citizen, the trial court necessarily found beyond a reasonable doubt that the victim was over 60 years old. The judge specifically noted in finding defendant guilty that the victim was over 80 years old at the time of the attack. . . . [And] in this case age was the only aggravating factor relied upon by the trial court to justify the extended term sentence.

(Modified Order on Denial of Rehearing at 16-17.)

As a threshold matter, Lavin did not challenge "all five aggr[avating] factors" on direct appeal or post-conviction review; rather, Lavin's prior *Apprendi* challenge was based solely on the aggravating factor of Costello's advanced age. (*See* Lavin Appellate Br; Lavin's Pet. for Leave to Appeal; Pet. for Post-Conviction Relief; Post-Conviction Pet. for Leave to Appeal.) Accordingly, Lavin's arguments with respect to the other four aggravating factors are barred by the doctrine of procedural default.[6] *See Byers*, --- F.3d ---, 2010 WL 2696522, at *4.

---

[6]     Lavin likewise failed to previously argue in state court, as he does here, that he was not "admonished or notified or advised of the aggr[avating] factors to defend against them . . . ." (*See* Lavin Appellate Br; Lavin's Pet. for Leave to Appeal; Pet. for Post-Conviction Relief; Post-Conviction Pet. for Leave to Appeal.) Accordingly, this

Turning to the question of whether the trial judge's consideration of Costello's age violates *Apprendi*, the court concludes that it does not. *Mack v. McCann*, 530 F.3d 523, 536-37 (7th Cir. 2008), is instructive. In that case, Mack was convicted of first degree murder following a bench trial in Illinois state court. *Id*. at 524-25. In a petition for habeas relief, Mack argued that he was subject to an extended sentenced based on an aggravating factor that was determined by the judge (and not by a jury), allegedly in violation of *Apprendi*. *Id.* at 535. The aggravating factor in *Mack* was whether "the defendant killed the murdered individual intentionally or with the knowledge that the acts which caused the death created a strong probability of death . . . ." *Id.* at 534. The Seventh Circuit disagreed with Mack, denying his habeas petition on the following grounds:

> All that *Apprendi* requires is that Mack be found guilty beyond a reasonable doubt of every element of the crime of which he was charged. Those findings must be made by a jury unless the defendant has waived his right to a jury. Mack's state of mind at the time of the murder was both an element of the crime and part of the aggravating factor sentencing scheme, and Illinois law thus put the same question at issue twice. Once was enough for federal purposes. Mack waived his right to a jury for the guilt phase of the trial, where his state of mind was at issue and was determined beyond a reasonable doubt by the trial court . . . . For federal constitutional purposes, he . . . waived his right to have a jury determine his state of mind, and so there was no *Apprendi* violation. This is so because no *additional* fact-findings beyond those made in the guilt phase . . . were necessary to impose a sentence of natural life.

*Id.* at 536 (internal citations omitted) (emphasis in original).

As in *Mack*, Costello's status as a senior citizen was "both an element of the crime and part of the aggravating factor sentencing scheme." *Id.* at 536. The crime of aggravated battery of a senior citizen requires that the defendant "intentionally or knowingly caused great bodily harm or permanent disability . . . to an individual of 60 years of age or older . . . ." 720 ILCS

---

argument is barred by procedural default. *See Byers*, --- F.3d ---, 2010 WL 2696522, at *4. In any event, the Illinois Appellate Court expressly noted that "The aggravating factor of the victim's age was submitted to the trial court in the indictment, putting defendant on notice that an extended sentence was possible." (Modified Order on Denial of Rehearing at 16-17.)

5/12-4.6.  Similarly, Illinois law provides an extended sentence if the defendant is found to have "intentionally or knowingly caus[ed] great bodily harm or permanent disability . . .  to an individual of 60 years of age or older . . . ," pursuant to 720 ILCS 5/12-4.6.  Following the guilt phase of the trial, the judge made findings of fact that Lavin had assaulted Costello, and that Costello was "[i]n excess of eighty years old."  (Tr. R. at H90-91.)  In applying the sentencing enhancement, the trial judge referred back to his findings, noting that "[t]he victim being over eighty [was] a matter of fact in this case."  (Tr. R. I34-35.)  By waiving his right to a jury trial, Lavin opted for a bench trial "where his state of mind was at issue and was determined beyond a reasonable doubt by the trial court."  *See Mack*, 530 F.3d at 536.  Since the trial judge's consideration of Costello's advanced age as an aggravating factor required "no *additional* fact-findings beyond those made in the guilt phase," *id.*, the Illinois Appellate Court's rejection of Lavin's *Apprendi* challenge was reasonable.  (*See* Modified Order on Denial of Rehearing at 16-17.)

## D.  Sufficiency of the Evidence

Lavin argues that "there was no proof beyond a reasonable doubt that he intended to kill the man with whom he fought."  (Pet.'s Reply and Mem. of Law at 2; *see also* Second Amend. Pet. at 31-87.)  Respondent argues that "[Lavin's] act of repeatedly stomping on an 81-year-old man's head after knocking him to the ground with a blow to the head is sufficient evidence of intent to kill."  (Answer to Second Amend. Pet. at 33.)  The court agrees with Respondent.

"Someone petitioning for habeas corpus relief is entitled to prevail 'if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'"  *Burns v. Hompe*, 339 Fed. Appx. 624, 629 (7th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).  When evaluating a habeas petition, the

court is "generally . . . required to accept credibility determinations by the initial factfinder, who is in the best position to make those determinations." *Id.* Moreover, "[w]hen a habeas reviewing court considers . . . evidence, it must view it in the light most favorable to the prosecution . . . ." *Ford v. Ahitow*, 104 F.3d 926, 939 (7th Cir. 1997).

In finding Lavin guilty of attempted first degree murder, the trial judge ruled as follows:

> The first question is who was the person who committed this atrocity upon Mr. Costello. And the evidence for that comes primarily from Mr. Gilbert. And quite frankly, I believe Mr. Gilbert. I think you're the one who, Mr. Lavin, struck Mr. Costello. You knocked him down and I think you stomped him three times just like Mr. Gilbert indicated.
>
> And the question is applying the law to those facts, what does that make you guilty of. I would note that Mr. Costello is a relatively short individual. I would say approximately maybe 5-foot-4. And he's a person of extremely advanced years. In excess of 80 years old. As far as I'm concerned it's extremely advanced. And that he is not a very large person . . . . I will give him 135 [lbs] tops. . . .
>
> As I said, he's an older person. The defendant I would say goes around 200, probably a little more, 210 probably. So Mr. Lavin, you have got 40 odd years on this man in terms of age and you got him by at least 70 pounds probably.
>
> And then we look at what you did. You knocked him off his feet with one punch. Hardly surprising given the frailty of the victim. And while he's laying on the ground, you heel stomped him. Three times. From the testimony.
>
> I could give you I suppose one in the rage with which you were obviously feeling at the time when you attacked this man. And say well that was just part of your whatever it was you were thinking of. I might even give you two. But doing it three times to me, Mr. Lavin, under the circumstances of this case, that makes it attempt[ed] murder in my opinion. That's what I am finding you guilty.

(Tr. R. at H90-92.)

The Illinois Appellate Court affirmed Lavin's conviction, holding that:

> [R]epeatedly striking an 81-year-old victim in the head showed that defendant possessed the requisite intent. A finding that defendant intended to kill the victim does not require evidence of a preconceived plan or the use of a deadly weapon. The trial court heard Gilbert's testimony and noted the difference in size and strength between defendant and the victim. The court examined the character of

the attack and found that the number of blows exceeded mere rage. Further, several witnesses testified that the victim's injuries were extensive, requiring several months of hospitalization, an intubation and subsequent physical therapy. Dr. Lergosa also testified that the victim's mobility, speech and memory were affected. The trial court's finding that defendant possessed the requisite intent was supported by the evidence presented when viewed in a light most favorable to the prosecution.

(Modified Order on Denial of Rehearing at 13 (internal citations omitted).)

### 1. Three Stomps

First, Lavin argues that there was insufficient evidence that he stomped on Costello's head while Costello was lying on the ground. (Pet.'s Reply and Mem. of Law at 2-5; Lavin's Reply at 4, Doc. No. 166.) Specifically, Lavin complains that "there is no direct evidence that Lavin stomped on the victim's head three times," nor was there any "medical evidence . . . to distinguish the injuries caused by the punch, or Lavin's fall [to] the ground, from any injuries that may have been caused by the kick or kicks." (Lavin's Reply at 4.) Lavin's argument fails.

Lavin correctly asserts that "evidence to any kick-caused injuries must be inferred circumstantially." (Lavin's Reply at 4.) It is well-settled, however, that "[a] verdict may be rational even if it relies solely on circumstantial evidence." *United States v. Warren*, 593 F.3d 540, 547 (7th Cir. 2010). The record reflects that the trial judge had ample circumstantial and other evidence to determine Lavin's guilt beyond a reasonable doubt, based primarily on the testimony of Mark Gilbert, Barbara Wilson, Kevin McMahon, Enestecia Lergosa, and Costello. (*See* Tr. R.)

Gilbert, the only eyewitness to the altercation between Lavin and Costello, testified as to the events of April 20, 1997. (*Id.* at G21-48.) At trial, Gilbert told the court that he was returning home from a visit with his future mother-in-law when he saw a strange man, later identified as Lavin, attempting to climb the fence in Gilbert's yard. (*Id.* at G21.) Gilbert told

Lavin to "get out of here, be about your business." (*Id*. at G23-24.) Gilbert watched Lavin walk across the street and head east from Gilbert's home. (*Id*. at G25.) Half a block away, Lavin encountered another individual, later identified as Costello. (*Id*. at G26.) According to Gilbert:

> A:     There was a push and then - -
>
> ****
>
> I seen both push. I wasn't sure who did it - - was the one who initiated it. But I seen, you know, both of their arms out pushed. And then I seen the defendant throw a right and hit the gentleman in the face and the guy went down.
>
> ****
>
> And then alls I could see was the gentleman, the defendant raising his foot, I could see his knee and it looked like he was stomping on something . . . . Three times.
>
> Q:     Were you able to see what he was stomping on?
> A:     No.
>
> ****
>
> Q:     What did you do?
> A:     . . . I walked over to the corner to see what was going on and I seen a man [Costello] laying on the ground. His face was pretty messed up. He had blood all over. His mouth was full of blood.

(*Id*. at G26-27; *see also id.* at G47-48.) Although Gilbert did not see what Lavin "was stomping on," a reasonable trier of fact could easily infer from Gilbert's testimony that Costello was stomping Lavin's head.

The judge's findings are also supported the testimony of Barbara Wilson, a forensic scientist with the Illinois state police crime lab and "an expert in the field of forensic DNA analysis." (*Id.* at G120-121.) The parties stipulated that if called as a witness, Wilson would have testified that there were two blood stains found on the pair of boots taken from Lavin after his arrest on the night of April 20, 1997. (*Id.*) Wilson "analyzed the DNA extracted from those two blood stains in comparison with DNA extracted from the blood of Gilbert Costello and John Lavin." (*Id.*) Based on her "analysis, training, and experience," Wilson would have testified that "it is her opinion to a reasonable degree of forensic science certainty that the DNA extracted

from the first stain is consistent with originating from Gilbert Costello and an unidentified individual." (*Id.* at G121-22.) The second stain was "was consistent with originating from John Lavin and Gilbert Costello." (*Id.* at G122.) Wilson's uncontroverted expert testimony further supports the trial judge's conclusion that Lavin stomped on Costello's head.

Kevin McMahon, Enestecia Lergosa, and Costello testified as to the severity of Costello's injuries. McMahon, the paramedic who attended to Costello at the scene, testified that Costello had been "severely beaten about the head and face." (*Id.* at H3-5.) According to McMahon, Costello was "in very severe condition"; so severe that Costello had to be intubated (a "radical maneuver") and taken directly to a trauma center. (*Id.* at H6-8.) Lergosa, Costello's primary physician, testified to the long-term effects of the assault. (*Id.* at H13-22.) Lergosa explained that Costell's injuries affected his ability to walk, speak, swallow, and remember. (*Id.* at H13-20.) After that, Costello, who had previously lived on his own in an apartment, was admitted to a nursing home where he continues to reside. (*Id.* at H21-22.) Costello also took the stand; although he could not remember the events surrounding his encounter with Lavin, he confirmed that he now suffers from "brain damage." (*Id.* at H23-29.) Costello described his memory lapses, difficulty walking, and his "confine[ment]" to a nursing home following the assault. (*Id.*) This testimony regarding the severity of Costello's injuries suggests that Lavin did much more than just punch Costello and knock him to the ground. Rather, a reasonable trier of fact could find that Costello's injuries are consistent with Lavin having stomped on his head three times. Based on the foregoing evidence, the court cannot conclude that the Illinois Appellate Court was unreasonable in affirming Lavin's conviction.

### 2. Motive

Next, Lavin argues that the trial judge's finding of specific intent was unreasonable because "[t]here was no proof of any facts suggesting a motive to kill." (Pet.'s Reply and Mem. of Law at 3-4.) In support of his argument, Lavin points to testimony that Lavin and Costello had never met before, that none of the trial witnesses heard any "shouting or arguing," and that no one testified as to "who started" the altercation. (*Id.*)

Lavin's argument misses the mark; it is well-settled that "the prosecution is not required to prove motive in order to sustain a conviction for attempted murder and aggravated battery." *People v. Furdge*, 332 Ill.App.3d 1019, 774 N.E.2d 415, 419 (Ill. App. Ct. 2002). Rather, specific intent to kill "can be inferred from the surrounding circumstances such as the character of the attack, use of a deadly weapon, and severity of injury." *People v. Valentin*, 808 N.E.2d 1056, 1061 (Ill. App. Ct. 2004). "Intent can also be inferred from an act, 'the direct and natural tendency of which is to destroy another's life.'" *Id.* (quoting *People v. Hill*, 658 N.E.2d 1294 (Ill. App. Ct. 1995)). "Disparity in size and strength between the defendant and the victim and the nature and extent of the victim's injuries are relevant circumstances in ascertaining whether the defendant possessed the necessary mental state." *People v. Reed*, 698 N.E.2d 620, 634 (Ill. App. Ct. 1998) (quoting *People v. Tye*, 565 N.E.2d 931 (Ill. 1990)).

The trial judge expressly relied upon the "disparity in size and strength," the "character of the attack," and the severity of Costello's injury in finding Lavin guilty of attempted first degree murder. *See Valentin*, 808 N.E.2d at 1061; *Reed*, 698 N.E.2d at 634. With respect to the size and strength disparity, the trial court noted that "Mr. Costello is a relatively short individual . . . . maybe 5-foot-4," and "[i]n excess of 80 years old." (Tr. R. at H90-92.) Lavin, by contrast, "goes around 200, probably a little more, 210 probably," and was in his 40s. (*Id.*) Thus, the

court concluded, "Mr. Lavin, you have got 40 odd years on this man in terms of age and you got him by at least 70 pounds probably." (*Id.*) With respect to the character of the attack, the judge noted the savagery of the beating, finding that: "You knocked him off his feet with one punch. Hardly surprising given the frailty of the victim. And while he's laying on the ground, you heel stomped him. Three times." (*Id.*) In affirming the judgment of the trial court, the Illinois Court of Appeals highlighted the severity of Costello's injuries, which "require[ed] several months of hospitalization, an intubation and subsequent physical therapy," and noted that "the victim's mobility, speech and memory were affected." (Modified Order on Denial of Rehearing at 13 (internal citations omitted).) The court cannot say, therefore, that the Illinois Appellate Court was unreasonable in inferring that Lavin intended to kill Costello at the time of the assault. *See People v. Brackett*, 510 N.E.2d 877, 882 (Ill. 1987) (holding that intent to kill can be inferred from size and strength disparity between 21-year-old aggressor and 85 year-old victim); *see also Rowan v. Owens*, 752 F.2d 1186, 1188 (7th Cir. 1984) (holding that intent to kill can be inferred from "heavy blows to the head" of 72 year-old victim).

### 3. Intoxication

Lavin claims that he was intoxicated at the time of assault, and that "Lavin's intoxication . . . militates against the conclusion that he intended to kill Costello, suggesting instead that this was an unplanned, spontaneous, and aggressive act fueled by numerous 40-ounce bottles of malt liquor." (Pet.'s Reply and Mem. of Law at 5.)

Because Lavin failed to present this claim on direct appeal or during post-conviction review, it is barred by the doctrine of procedural default. (*See* Def. Appellant's Br.; Pet. for Leave to Appeal; Pet. for Post-Conviction Relief; Post-Conviction Pet. for Leave to Appeal.) *See Byers*, --- F.3d ---, 2010 WL 2696522, at *4. Even if Lavin had not procedurally defaulted

his intoxication argument, Lavin testified unequivocally at trial that he was not intoxicated on the

evening of April 20, 1997:

> Q: Mr. Lavin, the day of the 20th of April of 1997, did you have anything to drink of an alcoholic nature?
>
> ****
>
> A: I had two 40-ouncers throughout the day.
> Q: When you say 40-ouncers, was that malt liquor?
> A: Yes.
> Q: And what time did you have it?
> A: I had one about 1:00 o'clock and then another at about 4:00.
> Q: 1:00 o'clock a.m. or p.m.
> A: In the afternoon.
> Q: And the 4:00 o'clock one, a.m. or p.m.
> A: In the afternoon.
> Q: How long did it take you to drink that one at 4:00 p.m.?
> A: I would say an hour and a half.
> Q: Drank the whole thing?
> A: Yes, sir.
> Q: This incident allegedly occurred 9:00, between 9:00 and 10:00 o'clock in the evening.
> A: At that time were you under the influence of alcohol?
> Q: No, sir.

(Tr. at H53-54.)  In the words of the Seventh Circuit, "It is difficult to see how a collateral attack

based on the proposition that the petitioner's own trial testimony was a pack of lies has any

prospect of success.  Litigants must live with the stories that they tell under oath." *Escamilla v.

Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005).  Lavin is not therefore entitled to habeas relief

based on his claim of intoxication.

### 4.  "Transmogrification"

Finally, Lavin argues that "[t]here is no logic or reason to the [trial judge's] position that

somehow just before a third kick, if there was one, Lavin's thinking transmogrified from rage (a

state of mind that would not warrant a finding of intent to kill) into a specific intention to [k]ill

Costello."  (Lavin's Reply at 3.)  Lavin misapprehends both the law and the clear import of the

trial judge's findings.

Contrary to Lavin's characterization, the trial judge did not find that Lavin's mens rea "transmogrified" from rage to specific intent at some point during the assault. (*See id.*) By reasoning that "I could give you I suppose one in the rage with which you were obviously feeling at the time when you attacked this man. . . . I might even give you two," the trial judge clearly meant to suggest only that he might not have inferred specific intent if Lavin's attack on Costello had been less savage. (*See* Tr. R. at H90-92.)

Even if the trial judge had meant to suggest that Lavin's thinking "transmogrified" from rage to specific intent, it would still be unavailing to Lavin. Under Illinois law, "[i]t is not requisite or necessary that the party charged should have brooded over the intent, or entertained it for any considerable time, but it is enough if at the instant of the assault he intended to kill the party assaulted . . . ." *People v. Coolidge*, 187 N.E.2d 694, 696-97 (Ill. 1963). The fact that Lavin had not "brooded" over killing Costello is irrelevant; it is enough that Lavin formed the specific intent to kill at some point during the assault, as evinced by his stomping on Costello's head three times. (*See* Tr. R. at H90-92.) The court cannot agree that the Illinois Appellate Court was unreasonable in affirming the trial judge's ruling.

## IV. CONCLUSION

For the foregoing reasons, Lavin's second amended petition for writ of habeas corpus is denied.


ENTER:                          /s/_____
                                JOAN B. GOTTSCHALL
                                United States District Judge


DATED: August 13, 2010